[Civ. No. 4695.   Second Appellate District, Division Two.—December 9,  1927.]

JOSEPH   J.   MILES,  Respondent,   v.   C.   M.   ZADOW, Appellant.

N. B. Nelson for Appellant.

Humphrey Marshall for Respondent.

PEAIRS, J., *pro tem.*—This is an appeal by defendant, C. M. Zadow, from a judgment for $575 and costs rendered against him in the superior court of Los Angeles County.

The facts are as follows: In December, 1920, plaintiff, respondent herein, purchased a restaurant from one Bybee through the defendant, appellant herein, as business chance broker, and in the transaction the plaintiff executed a conditional sales agreement as security for the payment of $500 to the defendant; said sum being the unpaid balance of the purchase price of said restaurant.

After about one week's business the respondent attempted to rescind said purchase on the ground of fraudulent misrepresentations and filed suit against said Bybee and this defendant. The trial court found there was no fraud, but held that appellant Zadow accepted the rescission by taking possession of the restaurant from the respondent and selling it, pursuant to an agreement with the respondent made after the suit was filed. An amended and supplemental complaint, setting out this subsequent agreement, was filed after the trial, and respondent had judgment against defendant, Zadow, for $600. On appeal to this court the judgment was reversed for the reason that the facts alleged in the supplemental complaint occurred after the filing of the original complaint and were no part of the original case. (See *Miles* v. *Bybee*, 59 Cal. App. 613 [211 Pac. 251].) Conforming to the decision in that case, the respondent filed this action, alleging the agreement between respondent and appellant, wherein appellant took possession of the restaurant from respondent and agreed to sell it for respondent and to pay over the proceeds of the sale to respondent, after deducting said sum of $500 belonging

to appellant, and secured by said conditional sales agreement.

In April, 1921, the appellant sold the restaurant for the sum of $1,300, but failed to pay anything to respondent. This action was brought to recover the sum of $800 from the appellant, which sum is the balance of the selling price after deducting said sum of $500 belonging to appellant. The trial court allowed the appellant said sum of $500, and also the sum of $225 for his expenses, paid from the time he took the restaurant to the date of sale, and gave respondent judgment for the remainder of the selling price, to wit, $575. Appellant's defense to this action is that there was a default in the payment of the monthly installments provided to be paid in said conditional sales agreement for $500, and that by reason of said default the respondent forfeited all interest in the restaurant, and when the restaurant was sold it was wholly the property of appellant, and that respondent had no interest in it; therefore respondent was not entitled to any of the proceeds of the sale.

There are two points in particular to be considered in this case, first: Did appellant agree to sell the property for respondent, which in the light of the evidence of both parties and the two decisions already rendered in connection with this matter, must be answered in the affirmative; and, second: Did the respondent place himself in default or did the purported notice given by appellant put respondent in default or deprive him of his interest?

It is not necessary to discuss the original contract of purchase further than to note that the total balance under the purchase lease was not due for many months after the date of sale of the property in April, 1921, but if by strict construction it could have been declared due, the default or forfeiture was cured by the new contract to sell, which contract was not limited, and sale thereunder completed.

At the time of the purchase by respondent, on December 13, 1920, he gave the Title Guarantee Sales Company, under which name appellant did business, authority in writing to sell the property here in question for $1,750, and agreed to pay a commission of $100 above $1,000, then later, on January 17, 1921, upon promise of appellant to sell the

said property for $1,300, turned over a key to the property to Zadow, appellant herein.

The lease and note given thereunder on December 13, 1920, was filed for record by appellant on —— date and afterward recorded on February 4, 1921. On January 28, 1921, appellant sent the following communication to respondent:

"Dear Sir: Your first installment on restaurant at 2116A North Broadway is past due, kindly call and make payment at this office, the amount is $50.00 and interest, if not paid in 3 days, the whole amount will become due.

"Yours truly,
"TITLE GUARANTEE SALES CO.,
"By C. M. ZADOW."

This so-called three-day notice is not authorized by the purchase lease or note, and further says nothing about termination of the agency of the appellant. Appellant sent another letter to respondent on February 4, 1921, on the day the original lease was recorded in which it is said: "unless you pay the whole amount of $500.00 dollars and interest within 3 days you will lose your right and title in said Restaurant, as I must protect my $500 dollars I loaned on said Restaurant. Respectfully yours, (Signed) C. M. Zadow." These letters were sent by the appellant to respondent, notwithstanding appellant's promise that the respondent should lose nothing and that he would sell for $1,300 and give respondent his money back. While the appellant by his written notices of January 28th and February 4th and his testimony, appears to have attempted to vary the contract entered into in January for the taking over of the property and selling the same and saving the respondent harmless, it seems to this court a futile effort, if it is not entitled to censure, as an attempt to do something which should not be countenanced by the courts.

From a consideration of the entire evidence in this case there is no question but that there was a mutual rescission evidenced by a new contract in which the appellant agreed to sell the property involved herein for $1,300 and after having taken possession thereof for that purpose he sold the same in April, 1921, and then failed to pay the balance due to the respondent or any portion thereof.

Counsel for appellant contends that if the appellant was still the agent at the time the sale of the property in question was made that all the interest that the respondent had therein was in the equipment of the restaurant; that the new lease which had been negotiated by appellant was his and that it was the main value in the deal; that respondent had failed to pay any further rent or any of the expenses from the time of the taking over of the key by appellant. It seems scarcely necessary for this court to spend a great deal of time in consideration of the discussion and evidence cited by counsel for appellant in this respect. At the time appellant agreed to sell the property and save respondent Miles free from loss, the appellant knew the value of the equipment of the restaurant and if it had deteriorated to the extent testified it had been only about one month since appellant was the owner. If the equipment had ever been worth $600 or $700 and the lease the other $500 which appellant charged respondent, it was still worth near that amount. The appellant did not put anyone in charge after he took the key nor make any attempt to keep the equipment in shape, which indicates that he considered respondent the owner up to the time of the sale in accordance with sales agreement.

Appellant knew that there was no written lease or other than an understanding that the rent was to be $25 and $1 for water. The lease stood until the 1st of March and appellant better than anyone else understood just what would have to be done in regard to leasing—the new lease cost appellant nothing. Moreover, there is evidence in the record to the effect that appellant was to pay to respondent the entire proceeds of the sale, less $500. Appellant also knew the respondent's financial situation and when he took the key it was for the purpose, as stated by appellant himself, of saving the respondent from any loss, knowing that the respondent could not pay rent nor make payments on the $500 note nor keep the place running. Thus appellant agreed to a rescission and entered into an agreement to sell the whole business or the price would not have been $1,300, from which appellant was to get his commission of $100 and save respondent from loss. Rent, cost of cash register, repairs, cleaning, and garbage removal were charged to respondent.

■ The trial court, hearing the evidence, observing the witnesses, and in the light of all the contracts, writings, and letters, gave judgment for the respondent in the sum of $575, which amount appears to have been arrived at by allowing the appellant the amount of the balance of purchase note in the sum of $500; the rental to the amount of $114; repairs in the sum of $15; the price of a cash register which had been stolen, $80; $11 for cleaning, $5 for removal of garbage, which amounted in all to $225, these amounts having been testified to by appellant, leaving a balance to respondent of $575. The only other amount in dispute was $100 charged for commission, which the lower court held, under the circumstances, was not a proper charge. We are, however, of the opinion that the sales contract did call for a commission of $100 and that the judgment as rendered in the lower court is correct except as to said item.

The trial court had a right to believe any or all of the witnesses or any portion of the testimony which it deemed true, and this court will not comment upon the conflicting nature of the testimony of the appellant.

■ The contention of counsel for appellant that the decision is against law in that the court failed to find upon material issues presented by the answer of the appellant seems to be without merit when the findings are considered in conjunction with the pleadings and the evidence in the case. Under the evidence the court would have been bound to find against appellant upon the issues in question. Therefore the failure to find upon them is not prejudicial error.

This court will not discuss much of the law cited by counsel for the reason that it bears upon a view of the case which would hold that there was no agreement on the part of the appellant to sell the property, which agreement for sale the court below found satisfactorily proven, and in which belief this court coincides, after having carefully considered all the evidence before it.

■ It is contended by the appellant that there was no consideration for the agreement to sell, and in this connection we will quote from the case of *Gallagher* v. *Equitable Gas & Light Co.*, 141 Cal. 707 [75 Pac. 329] : ''These facts show consideration. There was a mutual exchange of promises—promise for promise—which will support each other

unless one or the other is void. (*Siddall* v. *Clark*, 89 Cal. 321 [26 Pac. 829].)'' In the case of *Rogers etc. Co.* v. *Southern California Investment Co.*, 159 Cal. 739 [35 L. R. A. (N. S.) 543, 115 Pac. 934], it is said: ''We may concede that defendant was then in default in its payments and that the plaintiff might have declared the defendant's interest forfeited by reason of such default. Such default and forfeiture could be waived by plaintiff. The execution of the contract to buy the interest of defendant for fifteen hundred dollars was a sufficient waiver of the right of plaintiff to declare the forfeiture. There is no merit in the claim that the contract was without consideration. The defendant was in possession of the greater part of the land, holding under the agreements aforesaid. In consequence of this contract of plaintiff to repurchase, defendant gave the possession to plaintiff, and it has ever since retained possession of all the lands. The yielding of possession constituted a sufficient consideration for the contract. Indeed, the mutual stipulations of the parties, that is, the actual conveyance in escrow by one, and the promise by the other to pay the price, both being valid, constituted a sufficient consideration. (*Siddall* v. *Clark*, 89 Cal. 321 [26 Pac. 829].)'' From the same opinion we also quote the following words as applying to this case: ''The transaction was, in effect, an agreement to rescind the previously executed agreements of sale and to limit and settle the amount to be restored to the defendant as a consequence of such rescission.'' In the case of *Anderson* v. *Adler*, 42 Cal. App. 779 [184 Pac. 42], it is said: '' 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.' (Civ. Code, sec. 1698.) An executed agreement is one the terms of which have been fully performed. (*Henehan* v. *Hart*, 127 Cal. 656, 657 [60 Pac. 426].) When, therefore, the trial court, on sufficient evidence, found the existence of an executed oral contract modifying the terms of the original lease as to the rent, and further found that it had been fully performed, it finally settled the issues of this case.'' In *Miles* v. *Bybee*, 59 Cal. App. 614 [211 Pac. 251], it is said: ''The case came on for trial in May, 1921. The court made findings that the representations made by defendant Bybee were true, and that the plaintiff was entitled to take nothing from the

defendants Bybee or Roddle, but rendered a judgment against Zadow in the sum of six hundred dollars. From this judgment Zadow appeals. The result at which the court thus arrived is explained as follows: At the trial it was shown in evidence that the restaurant property was held in possession by defendant Bybee under a lease contract from defendant Zadow, under which, upon the completion of certain payments, Zadow agreed to convey the property to Bybee; that after the plaintiff had given his notice of rescission, to wit, about the first of January, which was at least ten days after the commencement of this action, the plaintiff delivered the key of the restaurant premises to Zadow under an arrangement whereby Zadow was to sell the property and out of the proceeds repay to the plaintiff the money which he had paid for the restaurant; that on or about April 20, 1921, Zadow made a sale, and received from the purchaser the sum of six hundred dollars, together with a note for seven hundred dollars. In view of these facts, the court, at the time of its decision, permitted the plaintiff to file 'an amended and supplemental complaint,' 'to conform to the proof,' in which these subsequent transactions were set forth. Thereupon the court made its findings in which, after making certain allowances to Zadow, arising out of circumstances which we find it unnecessary to discuss, it determined that the plaintiff was entitled to judgment against Zadow for said sum of six hundred dollars. From the foregoing it is manifest that, although the plaintiff was not entitled to recover anything upon his original cause of action, he obtained judgment against Zadow by substituting him as the principal defendant on a new cause of action arising out of a contract made between him and the plaintiff after the commencement of this action. This is a totally different cause of action from that upon which the case went to trial.''

The cause of action mentioned in the closing sentence of the above quotation is the cause of action in this case, and it is upon that same cause of action that the trial court herein gave judgment for $575.

In our opinion the findings of the court below are sufficient to cover the issues upon which any evidence was given and are warranted by the evidence, except as to the $100 commission; therefore the findings and judgment below

are ordered modified to show an allowance for a commission of $100, and judgment therefore entered for $475 and interest and costs.

Judgment, as modified, affirmed.

Works, P. J., and Thompson, J., concurred.