[Civ. No. 7519.   Second Appellate District, Division One.—March 9, 1933.]

GEORGE  KELLER,  Respondent,  v.  L.  RICHBART, Appellant.

Benjamin J. Scheinman and Samuel DeGroot for Appellant.

Maurice Saeta for Respondent.

THE COURT.—The following opinion, which was prepared by the late Judge Clair Sprague Tappaan while acting as a justice *pro tempore* of this court, is hereby approved and adopted as the opinion of the court:

The plaintiff recovered a judgment against defendant, the jury assessing his damages at $2,471.44. From the judg-

ment entered upon the jury's verdict defendant appeals. Plaintiff's complaint states a cause of action arising from certain alleged violations of the terms of a lease by defendant, the lessor herein named. Defendant made a general denial of the allegations of the complaint and filed a cross-complaint claiming that certain rents were due him from plaintiff upon an implied contract.

From the evidence introduced at the trial it appears that the defendant was the owner of a certain garage building on the southeast corner of West Seventh and Magnolia Streets in the city of Los Angeles. That in November, 1927, he leased to plaintiff the rear or south 15 feet of the building for three years at a monthly rental of $100. Plaintiff to have the right to use the front or Seventh Street entrance to the building until a new entrance was cut on Magnolia Street. Some months later plaintiff, requiring more room for his business, entered into negotiations with defendant for more floor space in the garage building where he was lessee. With that end in view plaintiff wrote at defendant's dictation the following instrument:

"Five year lease                               April 1, 1928.

| First Year | $2000.00 | |
|---|---|---|
| Second Year | 1500.00 | |
| Third Year | 1000.00 | in case of sale |
| Fourth Year | 750.00 | 60 days Bonus. |
| Fifth Year | 50.00 | |

"This applys to repair shop from north side of wash rack to south end of building. Rent to start from April 1st, 1928, at 150.00 dollars a month. 50.00 more to go on lease for last month. Mr. L. Richbart is not to make any changes on front of building till a drive way is put in west side of building and a wall put acrost. Mr. Richbart agrees not to rent front of building for garage purposes.

"(Signed)   GEO. KELLER."

Plaintiff signed this instrument and delivered it to defendant at his request. Contemporaneously with the execution and delivery of the above-mentioned instrument, plaintiff, at the request of defendant, gave to defendant a check for the sum of $150, which check defendant accepted and later cashed. This check had written upon its face the following: "*Garage rent for April 1928 on new lease.*"  It

should be noted that defendant had up to this time received from plaintiff but $100 per month as rental of the premises occupied by plaintiff. Thereafter and at monthly intervals plaintiff deliverd to defendant some ten checks in the sum of $150 each which defendant indorsed and cashed. These checks were all inscribed as "rent"; in some instances there was added "for back end of garage", and in others appeared "rent" naming the current month. After the signing of the instrument heretofore mentioned plaintiff testified that he expended money in making improvements in his shop. He caused to be installed a washing-machine for automobiles which he thereafter purchased and also purchased a gasoline pump. Though defendant took some preliminary steps looking to the installing of the wall across the garage, and the placing of a new entrance into the premises occupied by plaintiff, no actual work was done in that regard. For a time the front part of the garage was rented by defendant to some person other than plaintiff. It would appear that plaintiff and defendant had some conversation as to storage of automobiles in the unused part of the building and that defendant gave his tacit consent to such use. He kept his own automobile here at the time and was often in the building. Though plaintiff collected the storage charges he was forced to employ an additional man on account of the fact, he testified, of there being but a common entrance and no dividing wall across the garage. In February, 1929, defendant leased the garage, including the part held by plaintiff, to the General Cab Company, and at about the same time offered plaintiff the sum of $500 to vacate the premises held by him. This offer was refused by plaintiff. Defendant then agreed to pay the General Cab Company $400 "as expense of such eviction", referring to the eviction of plaintiff from the premises. These facts are interesting when defendant's position considered here is that the original lease was still in force, which provided that plaintiff should vacate upon the payment of $250.

The evidence introduced by plaintiff is to the effect that after the General Cab Company entered into possession of the garage that he sent defendant the monthly rental provided to be paid by him in the instrument under which he claimed to hold the premises, that these checks were by defendant delivered to the General Cab Company and that

he, plaintiff, at the request of the cab company, exchanged them for checks of like amount made payable to the cab company. The evidence also shows that after the cab company entered into control of the premises it engaged in the garage business in a general way and that plaintiff's business declined until after a period of about three months the income that plaintiff received therefrom became so small that he could no longer operate the business and he was thereby forced to abandon the premises and store his equipment. The evidence also established the fact that during the time plaintiff occupied the premises in question and until the cab company entered upon them, he had built up a business therein that was operated by him at a substantial profit and had acquired a "good-will" which was of value.

· ▬ Defendant's first few specifications of error all are directed to one proposition of law and can very properly be considered here as presenting but a single question for determination. It is defendant's contention that the instrument, dated "April 1, 1928", and heretofore in this opinion set forth, was an attempt to make a new lease, and as it was unsigned by the lessor it was therefore void, and no rights were acquired thereunder by plaintiff. Defendant bases this contention on the statute of frauds. (Civ. Code, secs. 1091, 1624.) This instrument, though artlessly drawn, would seem (when it is considered that it must be construed most strictly as against defendant who dictated it) to contain all of the essentials of a valid lease. In any event, whether it be considered as a new lease or merely as a modification of the existing lease which at the time it was executed had some two years yet to run, both tenable theories under the facts here present, the identical question is presented. ▬ If the questioned instrument amounted to a modification of the existing lease between the parties, the failure of the defendant to sign would be immaterial under the circumstances of the instant case; an oral modification would have been binding, as far as it was executed. (*Anderson* v. *Adler*, 42 Cal. App. 776, 778 [184 Pac. 42]; *Julian* v. *Gold*, 214 Cal. 74 [3 Pac. (2d) 1009].) On the other hand, if the instrument is to be considered as a new lease, under the circumstances presented by the record here, it would be inequitable to permit the defendant to raise

the bar of the statute of frauds. The rule is well established in this jurisdiction that: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3.) This rule of law is clearly applicable here. Defendant accepted the rent under the new lease, declared before witnesses that he had made the lease, made measurement looking toward the improvements mentioned in the instrument, retained possession of the lease without question, and permitted plaintiff to expend moneys in improvement of the additional room included in the new arrangement. He was estopped from repudiating the lease. Defendant's failure to sign the lease when it was delivered to him by plaintiff, taken in connection with his other acts in relation thereto, would seem to fairly bring the instant case within the exception created by section 1623 of the Civil Code. Under circumstances somewhat similar to this case our courts have applied the rule of estoppel just referred to. The following cases are illustrative of this point: *Schubert* v. *Lowe,* 193 Cal. 291, 295 [223 Pac. 550]; *Seymour* v. *Oelrichs,* 156 Cal. 782, 795 [106 Pac. 88, 134 Am. St. Rep. 154]; *Holstrom* v. *Mullen,* 84 Cal. App. 1 [257 Pac. 545]; *Heffernan* v. *Davis,* 24 Cal. App. 295 [140 Pac. 716].

Defendant complains that the trial court was in error in permitting plaintiff to amend his complaint during the trial. The record fails to disclose that the court in permitting this amendment exercised other than sound judicial discretion. The amendment was authorized by section 473 of the Code of Civil Procedure.

The next question presented here is that the leasing of the premises for "general cab business" was not one for "garage purposes". The evidence is ample to support the implied finding that the leasing was in fact one for "garage purposes".

There is no merit in defendant's contention that the jury failed to find on the issues raised by the cross-complaint. Defendant waived any objection as to the form of verdict by his failure to make a timely objection thereto. (*Asebez* v. *Bliss,* 178 Cal. 137 [172 Pac. 595].) There was evidence

sufficient to sustain the implied finding as against defendant upon these issues.

The final point raised by defendant is that there was insufficient evidence to warrant the jury in finding the amount of damages awarded by them to plaintiff. The question is one of fact and the record here is sufficient to support the award. Plaintiff introduced evidence which was not questioned, that the income received by him from the business was lost to him within a very short time after the premises came under the control of the cab company. He had derived a substantial profit therefrom up to that time. He had established a "going business" and had acquired a "good-will" in the location. This was a valuable property interest of which he was deprived by the acts of the defendant. The damages awarded, under the circumstances of the instant case, are not so large or unreasonable that this court would be justified in reversing the judgment or in declaring them unreasonable in amount.

The purported appeal from the order denying a new trial is dismissed. The judgment is affirmed.